UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| CHERYL ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 17-304-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the cross-motions for summary judgment filed by Plaintiff Cheryl Anderson and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security. [Record Nos. 10, 12] Anderson contends that the administrative law judge ("ALJ") assigned to her case erred by denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). [Record No. 10] She asks the Court to reverse the ALJ's decision and to award her benefits or remand the case for a new hearing. [Record No. 10-1, p. 13] The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. [Record No. 12] For the reasons that follow, the Court will grant the Commissioner's motion and deny the relief sought by Anderson.

I.

Anderson filed applications for DIB under Title II and SSI under Title XVI of the Social Security Act on October 25, 2013. [Administrative Transcript, "Tr.," 216, 220] Anderson alleged that her disability began on October 22, 2012; however, she later amended the alleged onset date to January 3, 2013. [Tr. 57-58, 216, 220] Her applications were denied initially
-1-

and upon reconsideration. [Tr. 144-51, 158-72] Thereafter, an administrative hearing was held before ALJ Christopher C. Sheppard. [Tr. 55-99] The ALJ issued a written decision denying the claims. [Tr. 38-47] Anderson then sought review by the Appeals Council which was denied. [Tr. 1-7] Anderson has exhausted her administrative remedies and her case is ripe for review pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Anderson was fifty years old at the time her disability allegedly began, and fifty-three years old at the time of the administrative hearing. [Tr. 60, 216] She is approximately five feet tall and weighs 229 pounds. [Tr. 45, 64, 241] Her height and weight have not changed significantly since early 2012. [*See id.*] Anderson has a high school education and was employed for over twenty years as an injection molding inspector at a car manufacturer. [Tr. 60-61, 252] She testified that her position required being in constant motion and doing a lot of bending, twisting, and lifting. [Tr. 61] The vocational expert classified her former position as unskilled with a medium level of exertion. [Tr. 45, 87-90]

Anderson was involved in a car accident on October 22, 2012, and sustained right lumbar transverse process factures. [Tr. 44, 66, 337, 340, 342] She testified that she has suffered from back pain since the accident and was unable to return to work due to the pain. [Tr. 62-66, 260-64] Treatment notes from Dr. Robert Knetsche, a neurosurgeon, similarly indicate that Anderson's back pain prevented her from returning to work. [Tr. 370, 376] Anderson received physical therapy and injection therapy following the accident and reported improvement with working out in the pool and joint injection therapy. [TR. 44, 67, 370-72, 390-91, 419-38] An MRI from January 16, 2013, revealed mild degenerative disc disease at L2/3 and an MRI from February 13, 2013, revealed minimal degenerative disc disease at L2/3 with no significant central stenosis or neural foraminal narrowing. [Tr. 44, 347-48, 350-51]

An electromyogram/nerve conduction velocity ("EMG/NCV") study similarly showed no signs of nerve pathology. [Tr. 44, 380, 384]

Anderson stated that, in addition to her physical injuries, the accident has taken an emotional toll, causing her to become anxious and depressed. [Tr. 69, 259, 264] Dr. Jennifer Fishkoff performed a psychological consultative examination on February 28, 2014, which indicated that Anderson suffers from depression, pain, and anxiety, and that her mental stamina is weakened as a result of her pain and medications. [Tr. 473-78] According to Fishkoff, Anderson's psychiatric problems also moderately impair her ability to understand, retain, and follow instructions, tolerate frustration, and sustain attention to perform simple and repetitive tasks. [Tr. 478] Anderson intermittently sought mental health treatment throughout 2014 and 2015 and has not required emergent or inpatient treatment. [Tr. 45] She testified that she has had anxiety attacks less frequently recently, and the therapeutic treatment she is receiving seems to be helping. [Tr. 45, 69, 557, 595, 688]

State agency physician Donna Sadler, M.D., reviewed the relevant record and completed a Residual Functional Capacity ("RFC") assessment on July 17, 2014. [Tr. 129-31] Sadler's RFC assessment indicates that Anderson can occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, and can stand or walk (with normal breaks) for a total of 6 hours in an 8 hour workday. [Tr. 129] Based on this RFC, Anderson would be capable of performing work at the medium exertion level. [Tr. 131]

Anderson's primary care physician, Dr. David Overstreet, also completed an RFC form on November 13, 2015, indicating more severe limitations than Sadler listed. [Tr. 599-605] Overstreet stated that Anderson's pain is frequently severe enough to interfere with her attention and concentration. [Tr. 601] He indicated that she can sit for 30 minutes, stand for

-3-

15 minutes, and walk for 20 minutes continuously and without a change in position. [Tr. 601-02] He further indicated that she can stand and walk for less than 2 hours and sit for about 4 hours in an 8 hour workday, and that she can lift and carry 10 pounds occasionally, 20 pounds infrequently, and can never carry 50 pounds or more. [Tr. 602] Overstreet further stated that he would expect Anderson to be absent from work 5 or more days per month due to her pain. [Tr. 605] Overstreet similarly stated in his treatment notes from April 8, 2013, that Anderson was unable to stand for any length of time. [Tr. 447]

Anderson testified during the administrative hearing that she has lived with her mother for her entire life. [Tr. 69] She helps with laundry, doing dishes, and dusting, but has to take breaks when her back begins to hurt. [Tr. 71, 73] Anderson drives to the grocery store once or twice per week, and occasionally travels to visit family. [Tr. 72, 75, 77] She recently traveled to South Carolina and, at one point, indicated that she may move to Florida. [Tr. 45, 77, 688] Anderson enjoys reading, coloring, and Sudoku puzzles, but sometimes has difficulty following a conversation or a television program when she is stressed or in pain. [Tr. 73-74, 82-84] She spends much of her day in a recliner which elevates her legs and takes pressure off of her back. [Tr. 82-84] She walks outside for exercise, usually for around 30 minutes, but she has to stop if pain flares up, which happens more frequently in the winter. [Tr. 73-74] Anderson thought that she could lift or carry about 10 to 15 pounds but could not do so constantly for an 8 hour work day, that she could stand for about 30 minutes at a time, and that she could sit for about 30 to 40 minutes at a time. [Tr. 78-79, 84]

ALJ Sheppard issued a decision on March 4, 2016, concluding that Anderson was not disabled during the relevant time period. [Tr. 47] He found that Anderson has the following severe impairments: obesity, degenerative disc disease, fibromyalgia, and affective disorder.

-4-

[Tr. 40] However, he determined that Anderson did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 41]

ALJ Sheppard concluded that Anderson has the RFC to perform light work. [Tr. 43] More specifically, the ALJ found that she can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally, can sit for 6 hours in an 8 hour workday if she alternates to standing for 1 to 3 minutes after every 45 minutes of sitting, and can stand or walk for 6 hours in an 8 hour workday so long as she does not continuously stand or walk for more than 45 minutes at a time. [*Id.*] She can occasionally climb ramps and stairs, never climb ladders and scaffolds, occasionally stoop, kneel, crouch, and crawl, and cannot work around unprotected heights. [*Id.*] She can understand, remember, and carry out instructions to perform simple, routine tasks and can use judgment and deal with changes in a work setting to make simple work-related decisions. [*Id.*]

Based on this RFC and the testimony provided by Anderson and the vocational expert, ALJ Sheppard concluded that Anderson was unable to perform her past relevant work. [Tr. 45] However, based on the vocational expert's testimony, he found that there were jobs that existed in significant numbers in the national economy that Anderson could have performed, such as small products assembly, cashier, and grading or sorting.[1] [Tr. 46] As a result, he concluded that Anderson was not disabled. [Tr. 47]

---

[1] The ALJ recognized that Anderson would require a position that allows her to alternate sitting and standing. [Tr. 46, 91-95] The vocational expert testified that, based on her experience, the national numbers would have to be reduced by 30% to accommodate a sit/stand option, and that inspecting would be a more appropriate position than cashier. [Tr. 91-95] The ALJ concluded that, even reducing the national numbers by 30%, there were jobs that existed in significant numbers in the national economy that Anderson could perform. [Tr. 46]

## II.

A "disability" is defined under the Social Security Act as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). The burden shifts to the Commissioner with respect to the fifth step if the claimant satisfies the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d), 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether she can perform her past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If she can, she is not disabled. 20 C.F.R. § 404.1520(f), 416.920(f).

If the claimant's impairments prevent her from doing her past relevant work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether she can perform other work under the fifth step of the analysis. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

### III.

Anderson argues that ALJ Sheppard's decision was deficient because: (i) he failed to give good reasons for rejecting the opinions contained in Overstreet's RFC form; (ii) he improperly found that Anderson's statements regarding her pain and functional limitations were not entirely credible; and (iii) he failed to properly evaluate her obesity-related limitations. [Record No. 10-1, pp. 2, 7-12] Each of these arguments will be addressed in turn.

The regulations in place at the time of ALJ Sheppard's decision provide that a treating physician's opinion must be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion can be discounted "if there is substantial medical evidence to the contrary or the physician provided a conclusory opinion that claimant is unable to work," or the opinion "was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014) (citing *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

If the ALJ does not give a treating source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Additionally, the ALJ must provide "good reasons" for discounting the weight given to a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2) (2004)).[2] These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). This requirement allows

---

[2] This regulation is now located at 20 C.F.R. § 404.1527(c)(2).

a claimant to understand the disposition of her case, and facilitates meaningful review of the ALJ's application of the treating physician rule. *Id.* at 544-45.

The good reasons requirement is not excused simply because an ALJ's decision is supported by substantial evidence. *Id.* at 546. However, an ALJ's failure to provide good reasons may be harmless error when the ALJ has met the goal of § 1527(c) even though he did not comply with its terms, for example by "indirectly attacking the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see* § 404.1527(d)(3)."[2] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006). The critical inquiry here is not whether the ALJ rejected the treating physician's opinion, but whether the ALJ implicitly provided sufficient reasons for his rejection of the opinion. *Hall*, 148 F. App'x at 456.

ALJ Sheppard found that Anderson's activities of daily living and diagnostic test results were inconsistent with a finding of disability. [Tr. 44-45] He explained that Anderson is able to care for her personal needs and perform chores such as folding laundry, dusting, or washing dishes. [Tr. 44] She drives once or twice per week, walks for 30 minutes per day, visits family members, and eats out on occasion. [Tr. 44] During the pendency of her disability claim, Anderson was able to sing at a funeral, take care of her mother, and take a trip to South Carolina. [Tr. 44] Further, ALJ Sheppard described Anderson's MRIs revealing only mild or minimal degenerative disc disease, her normal EMG/NCV, and her reported improvement with

---

[2] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

physical therapy and pain management. [Tr. 44] ALJ Sheppard found that, "[b]ecause of the claimant's improvement with measures including exercise and physical therapy and minimal findings on imaging[,] . . . the claimant's pain resulting from degenerative disc disease and fibromylgia are adequately accounted for by the limitations in the [RFC]." [Tr. 44-45]

ALJ Sheppard then addressed Anderson's obesity and mental health condition. He explained that "her weight has remained stable over time. As she worked in the past despite her obesity . . . it does not limit her more than set forth in the [RFC]." [Tr. 45] He stated that Anderson has only intermittently sought mental health treatment and has noted improvement with therapy. [Tr. 45] The ALJ concluded that, "[b]ecause of her improvement albeit intermittent treatment[,] . . . her mental health symptoms are adequately accounted for by the imitations in the [RFC]." [Tr. 45]

After making his findings, ALJ Sheppard explained the weight he gave to the medical opinions in the record. He gave great weight to Dr. Fishkoff's opinion, and accounted for her finding of moderate mental limitations by restricting Anderson's RFC to a range of unskilled work involving only simple, routine tasks and simple work-related decisions. [Tr. 43, 45] However, he gave "little weight to the opinion of Dr. David Overstreet[,] insofar as it is more limiting than [the RFC determined by the ALJ] as it is inconsistent with imaging of record and the claimant's improvement with physical therapy, exercise, and counseling." [Tr. 45]

The ALJ properly explained that he accorded less than controlling weight to Overstreet's opinion because it was not support in light of Anderson's MRIs, x-rays, EMG/NCV study, and the improvement she showed with physical therapy and mental health counseling. Although the ALJ did not discuss Overstreet's specialization or the length, frequency, nature, and extent of his treatment relationship with Anderson, he adequately

explained that he discounted Overstreet's opinion on the basis of supportability and consistency. *See* 20 C.F.R. § 404.1527(c)(3)-(4). He identified the contrary medical evidence in sufficiently specific detail to allow Anderson to understand the disposition of her case and to facilitate meaningful review. *Wilson*, 378 F.3d at 544; *see also Grayheart*, 710 F.3d at 377 (finding that an ALJ failed to give good reasons when the ALJ's statement that a doctor's opinions were "not well-supported by any objective findings" was ambiguous and the ALJ did not identify the evidence that was purportedly inconsistent with the doctor's findings). Further, because ALJ Sheppard attacked the support for Overstreet's findings and their consistency with the record as a whole, any error resulting from the brevity of the ALJ's discussion was harmless. *See Hall*, 148 F. App'x at 464; *Nelson*, 195 F. App'x at 470.

ALJ Sheppard also found that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" because they were inconsistent with the objective medical evidence and her activities of daily living. [Tr. 44] But Anderson argues that it was an error to discount her testimony because her reported limitations were consistent with her activities of daily living, Dr. Overstreet's RFC form, Dr. Knetsche's statement that she could not return to work because of her pain, and Dr. Fishkoff's finding of moderate mental limitations. [Record No. 10-1, pp. 11-12]

"'There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record.'" *Cruise v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Jones*, 336 F.3d at 475). "However, an ALJ is not required to accept a claimant's subjective complaints and may consider the credibility of a claimant when making a determination of disability. *Id.* (quoting *Jones*, 336 F.3d at 746) (internal quotation marks and alterations omitted). Further, an ALJ's

-11-

determinations regarding a claimant's credibility are accorded significant deference "since the ALJ is charged with observing the claimant's demeanor and credibility." *Id.* (citation omitted). These findings will be upheld if they are supported by substantial evidence. *Id.*; *see also Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

The ALJ's RFC was largely consistent with Anderson's testimony. Anderson reported that she regularly walks for 30 minutes outside, and that she thought she could lift or carry about 10 to 15 pounds but could not do so constantly for an 8 hour work day, stand for about 30 minutes at a time, and sit for about 30 to 40 minutes at a time. [Tr. 73-74, 78-79, 84] The ALJ found that she can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally, can sit and stand for 45 minutes at a time, and can do so for 6 hours in an 8 hour workday if she alternates between sitting and standing every 1 to 3 minutes. [Tr. 43] To the extent that the ALJ found that Anderson's functional capacity was not quite as limited as she claimed, he pointed to specific activities and diagnostic test results that support his conclusions. [Tr. 44-45] This constitutes substantial evidence for the ALJ's decision. "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, [the Court is] not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'" *Ulman*, 693 F.3d at 714 (quoting *Bass*, 499 F.3d at 509).

Finally, ALJ Sheppard explained that, because Anderson's weight has remained constant and she was able to work in the past, her obesity would not limit her further than stated in the RFC. Although Anderson states in her motion that the ALJ "failed to properly evaluate the claimant's obesity-related limitations under SSR 02-1p," she has not developed this argument or explained why the ALJ's evaluation was deficient. Accordingly, this issue is

waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

### IV.

The ALJ provided good reason for the weight he gave to the opinion of Anderson's treating physician. His assessment of Anderson's credibility and his conclusion that she is not disabled are supported by substantial evidence. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Nancy A. Berryhill's Motion for Summary Judgment [Record No. 12] is **GRANTED**.

2. Plaintiff Cheryl Anderson's Motion for Summary Judgment [Record No. 10] is **DENIED**.

3. The Commissioner's administrative decision will be **AFFIRMED** by a separate judgment entered this date.

This 9th day of February, 2018.

